Take up the last case of today, people against Gillum, number 514-0450. Counsel for Ellen, you may proceed. Good afternoon, Your Honor. My name is Ian Barnes, I'm the Office of the State Appellate Defender on behalf of Mr. Gillum. May it please the Court and my colleagues in the State. Our criminal justice system failed Mr. Gillum on all fronts at this trial. He was represented by a defense attorney who not only failed to object to numerous instances of prejudicial information, prejudicial comments, but he actively undertook a course of action that substantially prejudiced Mr. Gillum. Mr. Gillum was confronted with a prosecutor who made repeated pervasive comments that undermined the fairness of his trial and deprived him of due process. And the circuit court allowed for the improper admission of other crimes evidence and used multiple improper factors in his sentencing. I'd like to focus the majority of my extended argument today, which I'm grateful for, on defense counsel's conduct and the State's conduct. To begin with, I think there are two particular instances of defense counsel's conduct that were particularly egregious. The first was failing to request a severance. Generally, requesting a severance is a matter of trial strategy. However, when failing to request a severance prejudices a defendant on another count that is objectively unreasonable and is ineffective. And there was no reasonable trial strategy here that justified not severing Mr. Gillum's UUW by a felon count away from his attempt murder and ag battery with a firearm counts. And there are two reasons for that, two separate ways that Mr. Gillum was prejudiced. The first one is the more obvious way, which was Mr. Gillum's defense that he acted in self-defense essentially amounted to an admission of guilt in his UUW by a felon case. He admitted having the weapon. He admitted shooting the officer. The question was self-defense. But that was essentially an admission of guilt to the UUW by a felon. But going the other direction, you have a jury that is confronted with Mr. Gillum's claim that he acted in self-defense and that he is innocent. But the jury had to reconcile that with Mr. Gillum's admission that he had committed another felony, not previously, but in this very case. And that undoubtedly impacted his credibility overall. And there simply was no benefit to trying these cases together. There was disadvantage to be sure, but there was no benefit because this was not some situation where defense counsel could have been pursuing, for example, an all-or-nothing strategy. It was not possible for Mr. Gillum to be acquitted of all his counts because he was admitting he had the weapon. And therefore, it was just incomprehensible to not sever out the UUW by a felon count. Counsel had nothing to gain, and it was objectively unreasonable. And the prejudice was substantial. The jury had to consider the innocence or guilt of Mr. Gillum with respect to the attempt murder in light of his admission he had committed a felony in this case. Secondly, Mr. Gillum was prejudiced by defense counsel's decision to stipulate to the jury or in front of the jury that Mr. Gillum has been convicted of a forcible felony. And the forcible felony stipulation was for the purposes of the enhancement to UUW by a felon. It enhances the penalty from a class 3 to a class 2 if the person has been convicted of a forcible felony. That is a sentencing factor. That is not an element of the offense. It does not need to be proven beyond reasonable doubt. It does not need to be sent to the jury. A pregnant does not apply to it. It was purely a sentencing factor. There was no probative value to it. The jury did not need to hear it. It did not need to come in at all. And defense counsel's inexplicable decision to make that stipulation prejudiced Mr. Gillum because the central issue of this case was, was his use of force justified? And the jury had to consider that in light of the fact that it knew Mr. Gillum had committed some sort of forcible offense. They didn't know what it was. But the definition of the common sense meaning of forcible and force is plain. And, in fact, the statute that defines forcible felony lines up with exactly what you would expect to find in it. First degree murder, second degree murder, aggravated battery, various sexual assaults, arson, kidnapping. The jury can figure out what forcible felony means, or at least they can speculate wildly to the detriment of Mr. Gillum. And I would just like to reiterate that this was not a question of, is this substantially more probative than prejudicial? Is it more probative at all than is prejudicial? It served no probative purpose. It wasn't on element of defense. It did not need to be stipulated to in front of the jury. And what it amounted to essentially was propensity evidence by a felony. That Mr. Gillum had been convicted of a forcible felony and that undoubtedly affected the jury's view of his self-defense plan. Because they knew he had some sort of violent past or forcible felony in his past. And the prejudice there is tremendous. And the only reason it would have come in at all is because defense counsel was asleep at the wheel. There was no logical reason to stipulate to this. On top of that, defense counsel failed on numerous fronts to object to anything the state said, either during the closing argument or cross-examination. And to that end, it's worth discussing the state's conduct itself and not just the failure to object. You're saying the record will show no objections at all during cross? I believe during the recross of Mr. Gillum. I won't point to the defense counsel's states. Judge, I think he's answered the question. If my memory serves me, that was the only time during cross-examination or recross-examination that defense counsel objected. And the defendant did testify? He did. To that end, the primary issue of the state's conduct I'd like to focus on is its repeated efforts to introduce testimony through itself while cross-examining Mr. Gillum. People v. Blue tells us that it is improper, and I'm sorry, and also Illinois Professional Rule of Conduct 3.7 tells us it is improper for an attorney to enter evidence through themselves when they are an advocate in a case. And there are four reasons for that. The first is that, especially when it comes to prosecutors, as the attorney for that party, their objectivity cannot be guaranteed. Two, the jury is likely to imbue the prosecutor's comments with a great deal of weight, more so than another witness, because of the nature of their office. Three, having a prosecutor testify while cross-examining or direct examining a witness is confusing for the trier of fact, because they're forced to reconcile the witness's testimony with the state prosecutor. And four, it creates an appearance of impropriety, which our Supreme Court has said is equally as important as actual propriety. Can you give us a couple examples of what you consider the more egregious examples of comments that would cross the line into testimony? Yes, I certainly can, Your Honor. There was a period during Mr. Gillum's cross-examination where Mr. Gillum and the prosecutor were arguing about whether Mr. Gillum had left the halfway house and it was unauthorized movement or it was escape. And Mr. Gillum maintains it was unauthorized movement. The state challenges him on that. And at one point, it says, you're considered an escapee. You left. You didn't go back. It's no different than leaving the jail and they give you a day pass on furlough and you don't come back. You've escaped. You escaped. And it's worth noting, there was not a question in that phrase. It was simply the prosecutor arguing with Mr. Gillum while questioning him. The facts of Blue themselves, I think, are very instructive, and the analysis that the Supreme Court did, because in that case, the prosecutor did something very similar. During the examination of a witness, the state repeatedly said things like, judge, objection, that's a lie. Or I'd like to interpose an objection to counsel's continuous misstatement of what occurred. There's never been any interview in a cage. And the Supreme Court said that that was improper, one, because the jury was likely to give a lot of credibility to those comments. But two, because they were a simultaneous rebuttal to the witness's testimony. And that is, the state did not have to put on another witness to counter what the current witness was saying. The state got to do it in real time by simply contradicting what the witness was saying. And I'd urge your honors to keep that in mind because that is precisely what happened here throughout Mr. Gillum's cross-examination. The state repeatedly argues with him, and it's important to note that argumentative questions themselves are already improper. And objections to them should be sustained. And a number of the things that the state said here were not even questions. They were simply exposition on its personal view of the evidence. For example, Mr. Gillum is testifying about what happened during the encounter with the officer, and he says the officer hit him with his gun. And the prosecutor responds, I watched that video. I didn't see two or three head hits. Did you? What the prosecutor is doing is immediately rebutting Mr. Gillum's testimony in a way that the jury is likely to imbue with credibility because he is the prosecutor. And if we take the state's argument in their brief at face value, the video itself, according to the state, was of very poor quality, and it was difficult to discern what was going on. So the prosecutor's personal opinion of what happened matters. And it prejudiced Mr. Gillum by doing a simultaneous rebuttal of his testimony. And the important thing I would like to note about that is in People v. Johnson, which was the companion case to Blue, the Supreme Court acknowledged that while the advocate witness violations in Blue were error, and they contributed to the continuum of error in that case, they came at a relatively unimportant point during the trial. And they still found it to be worthy of this reversible continuum of error. Here, it was more egregious because it took place at the central point of this trial, during Mr. Gillum's testimony, the point where he argued or he told the jury, he acted in self-defense, and that was his chance to exonerate himself. This was the focal point of the trial. And Mr. Gillum was confronted by a prosecutor who simply argued with him. And I would suggest to this court that not only were those comments improper because the credibility of those comments was enhanced by the prosecutor's office, but they created an appearance of impropriety, which our Supreme Court says is equally as important as actual propriety. Because cross-examination should be about question and answer. It should be about eliciting facts that the prosecutor can use later to argue. It should not be this gladiatorial contest between the state and the prosecutor, in the moment, simply contradicting each other. That doesn't add any probative value, and it really demeans the entire process by which we determine Gillum's innocence, facts being logical and rational inferences. With my leftover time, I'd like to simply mention that those weren't the only errors. There were numerous other errors, both in terms of the state's conduct, the admission of improper other crimes evidence, both for to prove motive and intent, and for impeachment. And I would urge the lawyers not to consider these errors in isolation. These errors do not exist in a vacuum. They exist cumulatively, one after another, and they pile up and they cumulatively make a difference between defense counsel's conduct, the state's conduct, the improper admission of other crimes evidence. Overall, they deprive Mr. Gillum of a fair trial. So I would urge your honors, on the basis of all these errors, individually and together, to reverse Mr. Gillum's case, remand for a new fair trial. If your honors don't have any additional questions. Thank you, counsel. I have an opportunity to reply. Counsel for Appley. May it please the court. Counsel. Jennifer Camden on behalf of the state. The defendant asks this court to consider the errors together cumulatively. But the individual errors that the defendant is claiming, most of them require a showing, not just of some impropriety, but of an additional showing of manifest or substantial prejudice, just for the defendant to make the threshold burden of showing any error at all, let alone the plain error review that he's requesting with regard to so many of these claims. And I'd like to invert things a little and discuss the defendant's plain error claims. Now, he's claiming that there was, that various of these errors constituted plain error under the first prong of Herron because the evidence was overwhelming, based on his point that the, his argument is that the evidence was closely balanced because there was essentially a credibility contest between the defendant and Officer Baxton regarding whether Baxton provoked the use of deadly force against him while effecting this lawful arrest by, according to the defendant, hitting or threatening the defendant with death, which claims Baxton denied. But this case was more than a conflict between the defendant and Officer Baxton on that point. The defendant's testimony was also contradicted by the surveillance video, which does not, now, I presume that the court hasn't seen the video. The camera angle is a substantial distance from the confrontation between these two men, and it's at, Baxton's back is to the camera. And who is Baxton? I beg your pardon, Your Honor? Baxton is the police officer? Yes, Your Honor. And so, and the officer is trying, during the struggle which ensued after the defendant didn't put his hands on the hood of the car, Baxton is trying to get the defendant up onto the hood of the car to effect this lawful arrest. Baxton had recognized the defendant from his wanted poster. It's at that moment that the defendant is arguing that Baxton struck his head with his gun two or three times. Now, the video is clear enough to show that Baxton's movement of his limbs, Baxton is not raising his arm and making a striking motion. He has his arms on, his hands on the defendant, and is trying to get him onto the hood of the car. So, if he had struck the defendant, we would have seen that. You're saying the video is clear enough that we'll see that? Yes, Your Honor. The defendant's testimony was also contradicted by his prior inconsistent statement to police, in which he did not tell the police, and this was in an interrogation that occurred the day after the shooting, didn't mention to police that Baxton had verbally threatened to kill him, had said, run so I can shoot you, had said, I'm going to blow your brains out. This is what he testified to at trial. But despite his repeated passionate claims of self-defense in the interrogation, he never once said that Baxton said anything of the sort. In fact, he told police the day after the shooting that all he remembered Baxton saying was, this is how it's going to go. In addition, defendant's testimony... So, we have video of that interrogation in the record? Yes, Your Honor. Thank you. The defendant's testimony that Baxton struck him was also contradicted by evidence that defendant's head wasn't injured. Now, he did tell police that Baxton had struck him with the gun, and police examined defendant's head and photographed it and said in that video interrogation that the court has that they didn't see any evidence of injury. The evidence also shows that defendant had another motive to shoot Baxton, not self-defense, but to evade capture. Once apprehended by Baxton, who had been dispatched to this housing complex because of a report that this wanted fugitive had been seen there, defendant lied to Baxton about his name, resisted Baxton's attempt to arrest him, shot Baxton three times while Baxton was reaching for his pepper spray but not pointing anything at him, fled after shooting at Baxton three times, discarded his clothing as he fled, which was later recovered, and hid under the bed of an apartment with his gun next to him. The SWAT team had to come and extract him. Once he was in the interrogation, and the court has video of this, he told the police for the first half hour of that interrogation that someone else did it and that he didn't do it. It was only when told that there was video that he changed his story. These acts are not consistent with the acts of someone who had a reasonable belief. I'm going to give you extra time. No, it's okay. Thank you. These are not the acts of someone who had a reasonable belief in the need to defend himself. In addition to that, consider the jury instructions, that the jury was instructed both of the law concerning when an officer is justified in using force to effect a lawful arrest and when a person who initially provokes the use of force against him, as the defendant did when he resisted arrest, is justified in using force. So, based on this evidence and the jury instructions, the scales were not so evenly balanced that any of these claimed errors would have tipped the scales against the defendant. I also want to address the defendant's cumulative error, second qualifying error argument. The defendant's chief case is the blue case, which is a favorite of the defense bar, and I assume this court is very familiar with it. But a reminder that that case involved the state admitting lots of gratuitous evidence about the details of the family that the slain officer left behind and of his posthumous honors at police headquarters, that the prosecutor had a sustained closing argument strategy of appealing to jurors' emotions, and the state displayed a mannequin that was outfitted with the bloodied and brain-spattered uniform of the deceased officer for a long period of time during the trial. Multiple witnesses testified while this was displayed to the jury. And then that mannequin wearing that uniform was actually sent back to the jury room along with rubber gloves for all of the jurors as though they were encouraged to touch it. That is the type of accumulative systemic error that has been held to constitute cumulative error, second prong, plain error. That's not what occurred in this case. Let me ask you this question. What about the admission of the felon in possession of a firearm conviction? How is that admissible under Rule 609? I... Well, the... Sorry, is this with regard to the... Or Montgomery, either one. Yeah, so this is with regard to the impeachment or the motive or intent? Yes. Right. I'd like you to address that. Right. Well, it was admissible for impeachment purposes because it was a conviction within 10 years under Montgomery. The defendant is not arguing that simply that it was more prejudicial than probative. He's arguing that admission of that crime was error because it constituted mere fact impeachment. But that exists when a jury isn't told of the nature of the prior crime. And in this case, the jury was told of the nature of the prior offense. So defendant's claim based on the impeachment argument fails for that reason, that this wasn't mere fact impeachment. The defendant cites in his reply brief on that impeachment point a case called Salem in which second prong, plain error was found, where the court held that the improper admission of 12 of the defendant's prior convictions constituted structural error. But that case isn't comparable to this one because, in that case, the state conceded that the admission of 11 of those cases was improper because it was outside of the Montgomery rule. This conviction was not. And the 12th conviction was not a conviction at all because the defendant had never been sentenced on that crime. He just, he pled guilty but had never been sentenced. But in this case, there was no abuse of discretion and no error at all because there was no mere fact impeachment. And also, as Your Honor pointed out, the- Why are you, I mean, you are suggesting that's an abuse of discretion standard. I believe the felon suggested an overall standard on that point. Okay. I don't have that in front of me, Your Honor. That may be. Do you have any reason, basis for abuse of discretion standard on that point? Not in front of me, Your Honor. But regardless, it was separately admitted, not just for impeachment, but also to prove motive and intent. How is it related to motive and intent? Well, when the defendant and Baxman had their, met and defendant shot Baxman, defendant had been on the run from a federal halfway house for about the last six weeks, I think. After having walked away from it, he was being held on that felon in possession of a firearm charge. This particular charge was what he was- Yes, Your Honor. On the run from? Yes. Yes, Your Honor. So that's, and that's the basis on which the court found this. The state, during the discussion about whether to admit the crime for those purposes, the state predicted that it would be hard to divorce the reason for his prior custody from the fact of his prior custody. And the fact of his prior custody was something that was highly relevant to the attempt to murder and aggravated battery of firearm charges. Also, this evidence was unlikely to have influenced the jury. The state didn't emphasize it in cross-examination. And as I said earlier, the evidence of guilt was overwhelming. Counsel, what about the severance argument? I beg your pardon, Your Honor? The severance argument. Should have been, you know, counsel should have considered. Yeah, no, I definitely want to talk about that. The record reflects that this was a conscious strategy by counsel. It's not that counsel didn't consider this at all. It's that counsel considered and decided against it. And in his decision, he was supported by the defendant himself, and the record reflects that both the defendant and his counsel believed that the defendants would not be substantially prejudiced by non-severance. The state in the answer brief cited the Daniels case and the Poole case, in which the Fourth District in one case held that the record was insufficient to determine what defendant's counsel's trial strategy would have been. In the other, the court found that the record was sufficient to discern that counsel's trial strategy was to pursue an all-or-nothing defense. But this court should follow either one or the other of those cases. You heard counsel say that there was no possible benefit to pursuing it this way. How would you respond to that? Well, the defendant argued in his reply brief that counsel couldn't have been pursuing an all-or-nothing strategy because the defendant couldn't be acquitted of all the charges, quote, barring some tremendous oversight by the state. My response is precisely. Just because he was likely to be, in my view, to be convicted of all charges doesn't mean that there was no chance that he would not be convicted of any of the charges. As the Fourth District stated in Poole, severance in the context of an unlawful possession of a firearm by a felon case, or this charge, is a major disadvantage to the defendant because it does give the states two bites at the apple. The defense had no good options here. Joinder of these charges is not what guaranteed the defendant's conviction of unlawful possession of a weapon by a felon. It's not just that he testified in the context of his self-defense claim that he had a gun. It's that he was on video shooting the officer, and he confessed to police that he did that. Also, police found him, the SWAT team found him eight hours later, hiding under a bed with the gun that was proven to have fired the bullets that shot Baxton. Baxton was struck one time. So the evidence connected up the weapon that he was caught with with the bullet? The evidence connected up the gun with the bullet? Yes, Your Honor, it did. And he had the gun when he was caught? Yes, Your Honor. So the defense had no good options here. He had no defense to the weapons charge. Even the defendant on appeal says that, well, he could have relied on the presumption of innocence. The court can judge whether that would have gone far. In light of the seriousness of these other charges, the unlawful possession of weapons charge was really the least of the defendant's problem. And the joinder of that charge at least gave the state one fine of the apple and didn't materially disadvantage the defendant in any way because, and here's another point, the jury was going to learn about his fugitive status either way because the jury was going to need to hear that he was on the run and that there was a warrant out for him when Baxton apprehended him. So that's another reason why a trial strategy is apparent here and why the defendant hasn't proven his claim of ineffective assistance. What should we look for in the record to clearly show that was a trial strategy that the defendant agreed to? Well, this is around pages 11 and 12. The defense counsel actually doesn't specify that that was his strategy. This is in the record immediately before trial. This is the first day of trial before trial began. Around pages 11 and 12, the court says that, oh, sorry. In the transcript? Yes, yes, the trial transcript. The defense says that it is his strategy not to request severance, but he doesn't specify why that is his strategy. So this case is actually more like the Daniels case cited by the people in which an appellate court declined to review the identical claim concerning this weapons charge because the record was insufficient to discern what defense counsel's trial strategy was. The court said that the issue was better raised in post-conviction proceedings. Moving on to the advocate-witness argument. The defendant's claim is that the prosecutor violated this advocate-witness rule in cross-examining him about the video and about whether he escaped or whether his disappearance from the halfway house was unauthorized movement. Now, this advocate-witness rule most often arises where counsel is or will be called as a fact witness to provide sworn testimony. Obviously, that didn't happen here. And the people found three reported Illinois cases where it arises in the context that the defendant is arguing applies here, which is statements by non-testifying prosecutors. But in all three of those cases, and that includes the blue case that the defendant discussed here today, the statements of the prosecutors were factual assertions about content of out-of-court conversations between that prosecutor and the witness that was on the stand. These were matters peculiarly within the personal knowledge of the prosecutor. Statements made to contradict the witness's testimony about something known only to the witness and to the prosecutor. And that is the difference between those cases and this case. Because Assistant State's Attorney Steve Salterson was not present at the shooting. He did not say in response to defendant's testimony that Baskin struck him on the head with a gun. Salterson didn't say, I was in that parking lot and I saw him strike you. He didn't say that. He asked the defendant to explain the contradiction between defendant's testimony and the video evidence, the video evidence that the jury had seen just as the State's Attorney had seen, Assistant State's Attorney. The video was as clear to the prosecutor as it was to the jury. On cross-examination, a proper function of examination is to ask the witness about matters explaining or qualifying or destroying the witness's testimony or credibility. And it was not an abuse of discretion causing manifest prejudice to the defendant or the court to permit the State to inquire as to the obvious contradiction between defendant's testimony and the video evidence, which, as I said, shows physical contact but not Baskin hauling back and striking him. Also, it's notable that they really didn't argue about this point. The first time that defendant said that Baskin struck him in the head with a gun and the prosecutor asked him if the video had shown that, defendant said, well, the video didn't show the right angle, which seems like an apparent concession that the video really didn't show Baskin striking him. Then a little bit later in cross-examination, it came up again. Defendant, again, asserted that Baskin struck him with a gun. The prosecutor, again, inquired as to whether the video showed this. This time, the defendant maintained that the video did show it. And the prosecutor at that point said, well, the issue will be submitted to the jury. This can't be manifest prejudice because the prosecutor submitted the factual issue of whether Baskin had struck the defendant on the head with a gun to the jury's evaluation of the video, not to the prosecutor's own special knowledge. It's not as though the prosecutor said that he had some special skill in video analysis. And also during the state's closing argument, the prosecutor didn't suggest that the state's questions carried more weight than the defendant's answers. Also, again, as I said earlier, the case turned on more than what the video showed or didn't show. Separately, the defendant claims that a prosecutor gave his opinion that a defendant escaped from the halfway house in response to the defendant's claim that it was not escape but unauthorized movement. You have an extra minute. Thank you, Your Honor. Just very quickly, the prosecutor didn't assert personal knowledge of elements of the crime of escape or the terms of the defendant's federal custody at the halfway house. When the defendant said, well, I have a paper from the halfway house saying unauthorized movement, the prosecutor said, well, okay, let's move on, essentially accepting the defendant's assertion. Also, the defendant made a similar assertion to the Illinois State police officers who gave the video, and these two officers, one state police sergeant and one state police captain with 35 years of experience combined between them, were also bewildered at the defendant's assertion. So this exchange was cumulative of evidence that the jury already had before it, and it wasn't manifestly prejudicial because this was a side issue. The defendant wasn't charged with escape or unauthorized movement or anything else. He admitted that he had fled the halfway house, and the legal characterization of that act was a side issue. Thank you, counsel. Reply. Thank you, counsel. The first point I'd like to cover, Your Honors, is multiple times the opposing counsel said that the video is clear. And I'd like to read page 1 of the State's brief. It says, a surveillance video of the shooting exists, but its images are small and choppy, basically a blur of pixels. And it goes on to say that it's impossible to tell what, if anything, is in either man's hand at any time. Personally, I disagree with that. I think the video is clear, and this goes to the point the State made about the overwhelming nature of the evidence. What the video does show is Officer Baxter and Mr. Gillum standing very close together, maybe no more than a foot or two apart, for about 15 seconds. Mr. Gillum does not move. He does not attempt to flee. He doesn't do anything threatening. And the first thing Officer Baxter does is take a couple steps back, draw his service weapon, and Mr. Gillum turns and begins walking toward the hood of the police car, which, according to Officer Baxter, he had ordered Mr. Gillum, put your hands on the hood of the car. And it appears that Mr. Gillum is compliant. At that point, Baxter runs up behind Mr. Gillum, grabs him, and attempts to fling him onto the hood of the car. And that is the basis of the beginning of this encounter where Mr. Gillum said he feared for his life. The evidence is simply not that overwhelming in terms of looking at the video and seeing that this police officer acted with a force that seemed to be very excessive, considering Mr. Gillum was not resisting. But barring that, I would urge your honors to consider, if you think the evidence is overwhelming, consider that in light of defense counsel's performance, not just these larger errors, but generally. And a good example of that would be, at one point, Officer Baxter says he holstered his weapon before he eventually tried to perform what he called a soft, I think a soft empty hand technique on Mr. Gillum. But in the video, Officer Baxter never holsters his weapon before he comes at Mr. Gillum from behind. So there were inconsistencies in Officer Baxter's testimony that were never explored. There is the gun when he approaches him. It's in his hand still. And it's in his hand while the two of them are scuffling with each other. And at some point, they break apart. But didn't he have, the officer had a mace thing when he got shot. Later on, yes. But initially during the encounter, when he first comes at Mr. Gillum from behind, he is still holding the service weapon in his hand. So does the video show him holstering the gun at any point? It appears later on in the video he does holster the gun, and then he reaches back around his back again. And that's at the point Mr. Gillum draws his own weapon, fires three times, hits Officer Baxter once, and he fires as he's running backwards away from Officer Baxter, as if to get away from him. Very briefly, Mr. Gillum initially said, yes, it wasn't me, I did not commit the shooting. And his explanation for that was that he feared retaliation. That he had shot a police officer in self-defense, and he was afraid if he admitted that, that the police officers who had arrested him, or the SWAT team who initially apprehended him, were going to somehow retaliate against him. Which, respectfully, is not a completely unreasonable thing to believe. Additionally, I'd like to very briefly talk about the prior conviction in terms of both mere fact impeachment and coming in to prove motive for detention. Mere fact impeachment is designed to protect the jury from convictions that are not specified. Simply telling the jury he's been convicted of a felon. And the argument here is that telling the jury he's been convicted of a felon in possession of a firearm carries the same reasoning. Because while they certainly have access to the in possession of a firearm aspect of the offense, they're still left to speculate about what the felon part of felon in possession of a firearm means. And that is exactly why mere fact impeachment is not allowed. Because the jury is likely to speculate what that means. And it takes it out of the Montgomery analysis and prevents the court from deciding whether that conviction is more prejudicial than probative. Is rule 609 change Montgomery's analysis in any way here? I would say 609 and Montgomery are the same. The difference is in Cox and Atkinson when the Supreme Court talks about mere fact impeachment, they specify that it falls outside the use of discretion. Mere fact impeachment is not up to the discretion of the judge. Counsel had another minute if you need an extra minute to make another point, you can have it. I would simply just add when it comes to the motive and intent aspect of this conviction, the state said we cannot separate this from the other aspects of his flight from the halfway house, the fact that he had a warrant out for his arrest. And the circuit court agreed. And my argument is that was improper because it was simply nonsensical. And I support that with the fact that the state actually did separate them out. They, in their case in chief and through cross-examination, they elicited that Mr. Gillum was wanted, there was a warrant for his arrest, and he fled the halfway house. The actual conviction does not come in until their rebuttal case. It did not need to come in by the state's own actions in this case. Yet they represented to the court, we have to have it, we can't separate it out. And that was simply not true. This conviction did not need to come in through motive impeachment. And it simply wasn't relevant. The actual conviction itself has no bearing on whether he was wanted and whether or not it proved that he was attempting to evade arrest. I realize I'm out of time. I would simply, my last final point is referring to the advocate witness violations. The state said part of cross-examination is asking questions. And I agree. That wasn't done here. The prosecutor repeatedly did the opposite of asking questions. They made statements, and with respect to the distinction the state makes about personal knowledge and its other cases, firstly, those cases preceded Blue. They did not have that four-factor analysis I gave earlier. But on top of that, some of the state's comments were related to its personal knowledge. They said, I watched that video. I didn't see that. That is the state's personal knowledge. They had certainly seen the video, and they were commenting on that evidence. So, that being said, based on all the errors in Mr. Gillum's brief, I would urge this court to reverse the judgment of the circuit court and remand for a new and fair trial. Thank you. Thank you, counsel. The court will take this matter under advisement.